# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

RODNEY AND SHIRLEY DUTTON,  )
                                      )
             Plaintiffs,  )
vs.  )              NO.  CIV-13-0911-HE
                                        )
THE CITY OF MIDWEST CITY, ET AL.,  )
                                      )
            Defendants.  )

# ORDER

Plaintiffs Rodney and Shirley Dutton, a married couple appearing *pro se* and *in forma pauperis*, brought this action[1] pursuant to 42 U.S.C. § 1983, alleging various constitutional violations arising out of the arrest, confinement, and prosecution of Mr. Dutton. Prior orders of the court have addressed all claims against defendant City of Midwest City ("the City") other than one alleging violation of the Fourteenth Amendment duty to protect.[2] The claim is based on the alleged failure of the City to protect plaintiff from being assaulted by a fellow inmate while confined in the municipal jail. The City has moved for summary judgment [Doc. #53]. Also pending before the court is plaintiffs' motion to stay proceedings [Doc. #51]. The summary judgment motion is addressed first.

---

[1]*The court previously consolidated this case with another (CIV-13-912) that arose out of the same general circumstances. Order, November 27, 2013 [Doc. #17].*

[2]*The parties' pleadings and the court's prior orders have sometimes referred to plaintiffs' failure to protect claim as an Eighth Amendment claim. However, as the submissions of all parties recognize, the claim is actually a Fourteenth Amendment Due Process claim, rather than an Eighth Amendment claim, as plaintiff Rodney Dutton was a pretrial detainee at the time of the assault. The substantive standards are the same. See* <u>Martinez v. Beggs</u>, *563 F.3d 1082, 1088 (10th Cir. 2009).*

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). In determining whether this standard is met, the court views the evidence in the light most favorable to the non-moving party. Estate of Booker v. Gomez, 745 F.3d 405, 411 (10th Cir. 2014). "Where the facts are not in dispute and the parties only disagree about whether the actions were constitutional, summary disposition is appropriate." Christian Heritage Acad. v. Okla. Secondary Schs. Activities Ass'n, 483 F.3d 1025, 1030 (10th Cir. 2007).

Applying this standard, the court concludes the City's motion for summary judgment should be granted.

Facts

Viewing the evidence in the light most favorable to plaintiffs, the circumstances related to the failure to protect claim are as follows.[3] Plaintiff Rodney Dutton was booked into the Midwest City Jail on September 13, 2011. According to Mr. Dutton, as soon as he was placed in his assigned cell, another inmate began acting aggressively toward him. Mr. Dutton indicates he did not know the other inmate or have any history with him. He apparently had words with the other inmate,[4] Marcus White, but indicates he (Dutton) did not want to fight. He states that, in addition to the argument that ensued, White took off his

---

[3]*See generally, plaintiffs' response [Doc. #55] to the City's summary judgment motion, plaintiffs' amended complaint [Doc. #11], and portions of Rodney Dutton's deposition [Doc. #53-1]. The response and amended complaint are handwritten, but both are notarized and the amended complaint is explicitly verified. The court has viewed plaintiffs' factual assertions as affidavits or declarations sufficient for summary judgment purposes. See Fed.R.Civ.P. 56(c)(4).*

[4]*The content of the discussion is disputed.*

shirt, began flexing his muscles, and generally sought to assert dominance over Mr. Dutton. This aggression escalated to a physical altercation, which involved the other inmate repeatedly punching plaintiff in the face with what Mr. Dutton describes as "roundhouse" punches. Mr. Dutton states that the jail had security cameras which included surveillance of the cell where the assault occurred, and that the incident lasted for several minutes.[5] Plaintiffs' evidence is that a jailer, later identified as Rick White, arrived toward the end of the assault. Mr. Dutton states that the jailer did not intervene to stop the assault, but that it ended of its own accord.

Plaintiffs' evidence is that after the assault, Mr. Dutton's head and face were swollen, cut, bruised, and bleeding. He was initially provided emergency medical services at the jail. Because his headache, blurred vision, and pain persisted, he was transported to a local hospital for further treatment, including a CT scan, the following day. Plaintiff did not receive further treatment for his injuries, which were gone roughly two weeks later.

Although Mr. Dutton did not want to press charges against Marcus White, the City did so. Plaintiffs' submissions indicate White was prosecuted for the assault and was sentenced to thirty days confinement for it.

Discussion

To the extent that plaintiff Shirley Dutton seeks any relief in connection with the

---

[5]*It is unclear how much of the "several minutes" involved actual physical violence as opposed to White's muscle flexing and/or arguing.*

assault on Mr. Dutton, summary judgment is appropriate for the City.[6]  It is undisputed that only Mr. Dutton was incarcerated and only he was involved in the assault.  To bring a claim in a federal court, a plaintiff must demonstrate that he or she has standing to invoke the court's jurisdiction.  <u>Lujan v.  Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992)).  This requires the plaintiff to show, among other things, that he or she has suffered a concrete and particular injury in fact.  *Id.*  In general, a party must "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  <u>Kowalski v.  Tesmer</u>, 543 U.S. 125 (2004)).  Here, there is no showing of any violation of Ms. Dutton's rights.  The City's motion will be granted as to any claim asserted by Ms. Dutton based on a failure to protect.[7]

Mr. Dutton claims that the City's failure to protect him from an attack by his cellmate amounts to cruel and unusual punishment in violation of the Fourteenth Amendment.[8]  Generally speaking, a prison official's (or here, a municipal jailer's) "deliberate indifference" to a substantial risk of serious harm to an inmate violates the applicable constitutional standard.  *See generally*, <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994).  Prison or jail officials have a duty to protect prisoners from violence at the hands of other prisoners.  *Id*. at 832.

---

[6]*Ms. Dutton is a plaintiff and has signed the various pleadings in this case, including the response to the motion for summary judgment, but it is unclear whether plaintiffs view her as having any interest in the remaining claim.*

[7]*Further references to "plaintiff" in this order refer to Mr. Dutton.*

[8]*As noted above, the Fourteenth Amendment provides pretrial detainees the same degree of protection as the Eighth Amendment provides to convicted inmates.*

A failure to meet this duty constitutes a constitutional violation where (1) the alleged violation is "sufficiently serious" under an objective standard, and (2) the prison/jail official had subjective knowledge of the risk of harm. Howard v. Waide, 534 F.3d 1227, 1236 (10th Cir. 2008). As to the first (objective) element, a prisoner must prove that the conditions of his incarceration present an objective "substantial risk of serious harm." As to the second (subjective) element, the prisoner must establish that prison/jail officials had subjective knowledge of the risk of harm, meaning that they were both aware of the facts from which the necessary inference might be drawn and must have actually drawn the inference. *Id.*

Here, it is doubtful that plaintiff has presented evidence sufficient to create a justiciable question as to the objective element. Evidence that plaintiff was put in a jail cell with others does not, by itself, establish that he was incarcerated under conditions posing an objective risk of serious harm. There is no evidence suggesting that Mr. Dutton would be particularly vulnerable to attack based on any characteristic unique to him (his suggestion that, as a "newcomer" to the cell he was subject to greater risk, is unpersuasive). Mr. Dutton indicates he had no prior history with inmate White or any other inmate in the cell. The only evidence submitted which arguably suggests a basis for an objective observer knowing of a substantial risk is Mr. Dutton's statement that he observed several assaults later while serving time in the jail. If one assumes that his observation of later assaults tends to prove that assaults were also going on before he arrived, and that jail officials would have known of that, then perhaps a sufficient showing as to that element has been made. However, in light of the additional showing necessary to make out a claim against the City,

discussed below, it is unnecessary to finally resolve that question.

As to the second or subjective element, the court concludes plaintiff has presented evidence sufficient to make out that element. Plaintiff indicates that jailer White (not inmate White) arrived before the assault was over but did nothing to stop it. It is unclear from plaintiff's statement how long jailer White stood by while the assault continued but, viewing the evidence in the light most favorable to plaintiff, it supports an inference that jailer White had some opportunity to stop the assault but did not do so. Those facts, if ultimately proven, would support an inference that White subjectively knew of the risk to plaintiff and was deliberately indifferent to it.

Subject to the qualifications noted above, plaintiff has offered evidence sufficient to create a justiciable question as to whether jailer While violated his constitutional rights by not protecting him in the circumstances indicated. However, the question raised by the City's motion is not whether plaintiff has a claim against jailer White, but rather is whether there is a basis for liability against the City. The two questions are not the same.

A political subdivision like the City is not liable for the constitutional violations of its agents or employees on the basis of *respondeat superior.* Seifort v. Unified Gov't of Wyandotte County/Kansas City, 779 F.3d 1141, 1159 (10th Cir. 2015). Rather, the City is liable under § 1983 only for its own actions. Under this standard, a municipality may be held liable for either (1) actions taken by subordinate employees pursuant to an official policy or custom, or (2) the actions of a final policymaker for the municipality, such that the conduct may be viewed as the "official policy" of the entity. *Id.*; *see also*, Monnell v. Dept. of Social

Servs., 436 U.S. 658 (1978). Here, there is no suggestion that the conduct of any "final policymaker" was involved as to the assault or the response to it—jailer White plainly did not fit that description. Further, plaintiff has offered no evidence which would support an inference of a municipal policy or custom causing any constitutional violation.[9] He argues that a policy exists because a "policy is a reflection of the attitudes of staff that the municipality employs." [Doc. #55 at 10]. But that argument is inconsistent with the § 1983 standard for municipal liability. Such a "reflection" theory would effectively turn every employee into a policy maker and, as a practical matter, impose *respondeat superior* liability on the City. That result is contrary to the applicable law. *See generally*, Bryson v. City of Oklahoma City, 627 F.3d 784, 788 (10th Cir. 2010) (listing various ways in which the necessary municipal policy or custom might be shown).[10]

In short, plaintiff has failed to offer any evidence which would create a justiciable question as to the City's liability for any violation he might ultimately be able to establish as to jailer White. As a result, the City's motion for summary judgment will be granted.

So where does that leave this case? At the time plaintiffs filed their amended complaint, they listed defendants including the City of Midwest City and "an unknown detention officer 'John Doe'" [Doc. #11]. While, as the above discussion suggests, "John

---

[9]*Plaintiff's response [Doc. #55, at 10] refers to a written policy of the City, but the only written policy identified in plaintiff's submissions is one relating to the provision of counsel in municipal prosecutions. It does not relate to the failure to protect claim at issue here.*

[10]*Plaintiff makes passing reference to inadequate training or supervision of its employees by the City, but offers no evidence to support such an assertion.*

Doe" appears to have been identified during the course of the case (presumably Mark White, the jailer), he has not been formally identified as a defendant. It was unclear, as of the time the court began its consideration of the City's motion for summary judgment, whether plaintiffs were pursuing claims against individual officers and, if so, whether those officers had been served. As a result, the court entered its order of April 8, 2015 [Doc. #57], directing plaintiffs to provide proof of service. Plaintiffs later had summons issued for Mark White and the City of Midwest City [Doc. Nos. 61-2] and have since filed a return of service reflecting attempts to serve both. The City of Midwest City is already participating in this lawsuit and service on it is not an issue,[11] so the question becomes what effect should be given to plaintiffs' efforts to now serve jailer Mark White and to pursue claims against him.

As noted above, Mark White has never been formally added as a party to this case, either by formally identifying him as one of the John Doe defendants previously sued by that designation, or otherwise. Further, it appears from plaintiffs' proof of service [Doc. #65-2] that proper service has not been made on Mr. White in any event. The return indicates that process was served on the attorney for the City of Midwest City, rather than on Mr. White himself. To the extent that a claim is asserted against Mr. White in his individual capacity, he must be personally served and there is no indication that has happened.[12] If the attorneys

---

[11]The court's April 8 order was directed to any claims being pursued against, and service on, individual officers.

[12]To the extent plaintiffs seek to assert a claim against Mr. White in his official capacity, that is in substance a claim against the City and the claims against the City have now been resolved, either by prior order or by the grant of the City's summary judgment motion as discussed above.

for the City also represent Mr. White they could, of course, accept service on Mr. White's behalf. But there is no indication at this point that they represent Mr. White or that any agreement to accept service has been made. In any event, it is at least clear that plaintiffs are now seeking to pursue a failure to protect claim against Mr. White.

The court is mindful of the fact that this case has been going on for a long time and the status of claims against Mr. White should have been resolved before this. However, the court also recognizes that plaintiffs are proceeding *pro se*, they have pursued their claims with diligence throughout the case, and the appropriate time and manner for identifying and serving defendants initially identified only as "John Doe," whose identity is discovered only in the course of discovery, is less than clearcut. In these circumstances, the court concludes plaintiffs should be permitted to assert their claims against Mr. White, with the appropriate disposition of them to be addressed once he is properly before the court.

Also potentially impacting further proceedings in this case is plaintiffs' motion to stay. As noted above, plaintiffs initially asserted other claims challenging the constitutionality of Mr. Dutton's arrest, prosecution, and confinement, including a First Amendment retaliation claim and claims under the Fourth, Fifth, and Sixth Amendments. The court dismissed these claims on the basis of <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), which bars consideration of the particular claims unless and until Mr. Dutton's underlying criminal conviction is invalidated. Order, January 31, 2014 [Doc. #25]. Plaintiffs indicate they are seeking relief from the Oklahoma Supreme Court as to his convictions and, so far as the present submissions indicate, that Court has not ruled on plaintiffs' request. It is not clear exactly

9

what plaintiffs are asking the Supreme Court to do, but this court can envision no circumstance under which the Oklahoma Supreme Court could or would act in such a way as to solve plaintiffs' Heck problem. To do that, Mr. Dutton's conviction must be invalidated. Heck, 512 U.S. at 489 ("Even a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus.").[13] Under Oklahoma law, the appellate court with the authority to address the vacation of criminal convictions is the Oklahoma Court of Criminal Appeals, not the Oklahoma Supreme Court. *See* OKLA. CONST. art. 7, § 4; 22 OKLA. STAT. § 1087. Further, it is unclear whether plaintiffs have sought post-conviction relief at the trial court level, such as might be a basis for further review by any Oklahoma appellate court. In any event, it strikes this court as extraordinarily unlikely that plaintiffs' current state court efforts will result in any action warranting a stay here. However, in light of the need to resolve Mr. Dutton's claims against Mark White,[14] the court concludes a definitive ruling on plaintiffs' motion to stay is unnecessary at this time.

## Conclusion

For the reasons set forth above, defendant City of Midwest City's motion for summary

---

[13]*Plaintiffs' summary judgment response [Doc. #55] makes several references to a need to "exhaust state remedies." Exhaustion of remedies is a concept ordinarily arising in the course of habeas or other prisoner cases, rather than the circumstances existing here. The hurdle for Mr. Dutton is to get his state conviction vacated.*

[14]*Consistent with the above discussion, it appears that only Mr. Dutton, not Ms. Dutton, will have any further claim to pursue against Mr. White.*

judgment [Doc. #53] is **GRANTED** and the trial set on the court's May 2015 trial docket is **STRICKEN**.  Judgment will be entered in the City's favor upon resolution of the claims remaining against Mr. White.  On the assumption that plaintiff Rodney Dutton wishes to pursue claims against Mark White, he is directed to file a further amended complaint within **fourteen (14) days** identifying Mark White as a defendant and stating the basis for claim against him.  Upon proper service on Mr. White,[15] the court will establish a scheduling order designed to expedite the resolution of the remaining claims.  A decision on plaintiffs' motion to stay [Doc. #41] will be **DEFERRED** pending resolution of the claims against Mr. White.

**IT IS SO ORDERED.**

Dated this 21st day of April, 2015.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[15]*If the attorneys for the City will be acting as counsel for Mr. White in his individual capacity, they are strongly encouraged to accept service or otherwise cooperate so that this may be resolved without further sparring over service.*